**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREA GRIFFIN,             )
                                      )
          Plaintiff,       )
                                      )      No. 14 C 2481
       v.                   )
                                      )      Judge Sara L. Ellis
CHICAGO HOUSING AUTHORITY,    )
                                      )
          Defendant.    )

## OPINION AND ORDER

Plaintiff Andrea Griffin, who is African American, claims she was subjected to racial harassment, discrimination, and retaliation while working for Defendant Chicago Housing Authority (the "CHA"). She brings this lawsuit against the CHA for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Before the Court is the CHA's motion to dismiss [22], in which it argues that Griffin's claims are beyond the scope of her EEOC charge and not properly pleaded. Because Griffin's EEOC charge was limited to allegations of ongoing racial harassment and did not touch on the instances of racial discrimination raised in the Amended Complaint, she may not pursue her race discrimination claims at this time. Similarly, she has not exhausted her retaliation claim with respect to FMLA leave and her allegedly forced resignation, and so she cannot seek relief for these adverse employment actions. But Griffin has sufficiently pleaded the elements of her remaining exhausted claims so as to move forward on them.

# BACKGROUND[1]

Griffin began working for the CHA in May 2004. In November 2006, she took on an office manager role. In 2007, Griffin ran into problems with George Brown, the CHA's Deputy General Counsel, who is Caucasian. In January 2007, Brown twice told Griffin she was a "lazy black ass" in connection with slow mail delivery in the law department. Am. Compl., Ct. I, ¶ 13. Later in the year, Brown told Griffin that she was the "leader of the shiftless black pack." *Id.* Although Griffin tried to avoid Brown, his comments persisted. In February 2009, Brown called her a "black ass bitch" as she walked away from a conversation with him. *Id.* ¶ 15. Two years later, in 2011, Griffin overheard Brown making derogatory comments about an African American CHA attorney, Dallis Rogers. In July 2012, Brown again called Griffin a "lazy black ass" in a conversation regarding a court delivery. *Id.* ¶ 17. The next month, he called her "black and lazy" when discussing work planning. *Id.* ¶ 18.

Around September 11, 2012, Brown informed Griffin that he "would do what he wanted to do to her." *Id.* ¶ 19. That same day, Brown also came into Griffin's office and threw file folders at her from across her desk. Griffin reported Brown's racially discriminatory conduct to Scott Ammarell, CHA's Chief Legal Officer, through her supervisor, Melissa Freeman Cadoree, CHA's Deputy Chief Legal Officer, and Marilyn Jefferson, CHA's Vice President of Human Resources and Organizational Effectiveness. Cadoree told Brown not to have contact with Griffin, but this instruction was not followed. On November 14, 2012, Brown personally delivered his ARDC registration paperwork to Griffin. Their interactions continued in January 2013, when Brown stepped over Griffin on the copier room floor and threw file folders on a

---

[1] The facts in the background section are taken from Griffin's Amended Complaint and the exhibits attached thereto and are presumed true for the purpose of resolving the CHA's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

counter above where Griffin was storing supplies.  Griffin reported Brown's actions to Cadoree, but no action was taken against Brown.  Several days later, Brown walked by Griffin at a copier in the hallway, leaned in, and mumbled "black bitch" under his breath.  *Id.* ¶ 24.  Then, in February 2013, as he passed Griffin in the hallway, he repeated that phrase under his breath.  That same month, after a fire drill, Griffin knocked on a side door to enter the twelfth floor from the staircase.  Brown opened the door, smiling, but then upon seeing Griffin stopped smiling, let go of the door, and moved away while laughing and calling Griffin a "black bitch."  *Id.* ¶ 26.  In March 2013, when Brown passed Griffin in the legal library, he said to her, "I'll do what I want – now what is your Black ass going to do about it."  *Id.* ¶ 27.

Brown also treated African Americans working at the CHA differently from Caucasians.  For example, although Brown did not speak to Griffin or other African American staff members about anything but necessary business matters, he made pleasant conversation with Caucasian staff members.  He also denied Rogers' requests for pay increases but typically granted similar requests to Caucasian attorneys, so that Rogers earned less than the Caucasian attorneys who reported to Brown.

After Griffin complained to her supervisors about Brown's actions, she was monitored more closely and relieved of some of the authority she had as office manager.  Brown was told not to have contact with Griffin, so Griffin had to wait for an intermediary to retrieve work and comments from Brown so she could finish certain tasks.  Ammarell denied her a merit-based raise that other employees at the CHA received in early 2013.  In February 2013, Griffin had to take leave under the Family and Medical Leave Act ("FMLA"), for which the CHA required her to obtain detailed medical information instead of following its usual procedures.  Ultimately, Griffin stopped working for the CHA on March 22, 2013.

With the assistance of counsel, on February 5, 2013, Griffin filed a charge jointly with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC").  In her charge, Griffin alleged an ongoing pattern of racial discrimination and harassment by Brown, referencing the September 11, 2012 incident that caused her to complain to her supervisors of his discriminatory treatment.  She also complained that she was discriminated against because she received a lower hourly wage than a part-time Caucasian employee she supervised.  In addition to her discrimination and harassment claims, Griffin also charged that the CHA was retaliating against her on an ongoing basis for complaining to her supervisors about Brown's actions.  She specifically referenced being isolated in her role and being denied an equitable raise in January 2013.  The EEOC issued a notice of right to sue letter on January 9, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

I.    **Scope of Griffin's Claims**

The CHA argues that Griffin's claims must be dismissed because they are outside the scope of the claims she raised before the EEOC. Griffin may not bring a Title VII claim without first having filed a charge before the EEOC, which she did on February 5, 2013.[2] *See* 42 U.S.C. § 2000e–5(f)(1); *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). In turn, she "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). This requirement is intended to provide the employer with notice of the nature of the claims against it and provide the EEOC and the employer the opportunity to settle the dispute with the employee before litigation is instituted. *Geldon*, 414 F.3d at 819. An allegation in an EEOC charge is reasonably related to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (quoting *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999)). The standard is a liberal one. *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525–26 (7th Cir. 2008).

A.    **Race Discrimination and Harassment**

Griffin's EEOC charge was fairly general, complaining of ongoing racial harassment by Brown without giving any specific examples of the harassment. It did, however, include

---

[2] Section 1981 claims are not subject to the same exhaustion requirements as Title VII claims. *Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012). Griffin is not seeking relief under § 1981, however, and thus the Court must determine whether she has properly exhausted her claims.

reference to one instance of harassment occurring on or about September 11, 2012 without detailing what exactly was harassing about the interaction between Brown and Griffin on that day. The CHA argues that Griffin cannot now proceed on specific claims of racial harassment dating back to 2007, but the Court finds that an EEOC investigation into her general allegation of racial harassment would have reasonably encompassed the specific allegations Griffin has included in the Amended Complaint, even those dating back to 2007, as they all appear related. *Cf. Ajayi*, 336 F.3d at 529–30 (finding specific discriminatory action alleged in complaint not cognizable where there was no general allegation regarding supervisor's conduct in the EEOC charge that would have uncovered that action in the course of the EEOC's investigation). The CHA attempts to compare this case to *Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001 (N.D. Ill. 2012), but that case is distinguishable. There, the Court refused to allow the plaintiff to proceed on his racial harassment claim where his EEOC charge included instances of sexually offensive conduct but no mention of racial harassment. *Id.* at 1004–05. Here, however, there can be no question that Griffin mentioned ongoing racial harassment in her EEOC charge, and thus her failure to mention specific instances of that alleged harassment in the EEOC charge does not preclude her from pursuing the claim now.

But the Court finds that the race discrimination claims Griffin has asserted in her Amended Complaint are outside the scope of her EEOC charge and thus must be dismissed. Her EEOC charge mentioned only one instance of what could be interpreted as race discrimination— that she received a lower hourly wage than a part-time Caucasian employee she supervised. That claim does not appear in the Amended Complaint. Instead, Griffin complains that non-African American employees were treated better by Brown, that the CHA responded more favorably to complaints by non-African American employees, and that Rogers, a non-party, received a lower

salary than a Caucasian employee. None of these allegations of race discrimination appear in Griffin's EEOC charge nor could they be reasonably expected to have been included in the EEOC's investigation of Griffin's complaint regarding her hourly wage. *See Ajayi*, 336 F.3d at 530 (where plaintiff was aware of action at time of filing of charge, suspected it was discriminatory, but did not include it as part of charge while including other allegations of discriminatory action, the omitted action was not actionable as part of Title VII claim); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."). In fact, Griffin does not even address her race discrimination claims in her response to the CHA's motion to dismiss. Thus, although Count I of the Amended Complaint is titled "Title VII – Race Discrimination," Griffin's claims asserted under that heading will be limited to the alleged ongoing racial harassment she was subjected to by Brown. All claims of racial discrimination in Count I are dismissed.

### B. Retaliation

The CHA does not dispute that Griffin exhausted her retaliation claim with respect to the denial of a raise in early 2013. But it does argue that the remaining retaliatory acts alleged in the Amended Complaint—additional monitoring, removal of duties, added hurdles to obtain FMLA leave, and forced resignation—were not raised in Griffin's EEOC charge. Retaliation claims arising from the filing of an EEOC charge need not comply with the exhaustion requirement. *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2001); *McKenzie*, 92 F.3d at 482–83. But here Griffin is not complaining that she was forced to resign or was otherwise retaliated against for filing her EEOC charge. *See Benjamin v. Katten Muchin & Zavis*, 10 F. App'x 346, 354 (7th

Cir. 2001) (exception to exhaustion requirement did not apply where plaintiff was not complaining of retaliation arising from filing of EEOC charge). Similarly, the post-filing exception does not apply to retaliatory acts that occurred before Griffin filed her EEOC charge, since she could have included those acts in her charge. *McKenzie*, 92 F.3d at 483. Thus, the Court must instead determine whether Griffin's claims that she was more closely monitored, relieved of authority, required to take additional steps to be approved for FMLA leave, and forced to resign are reasonably related to the retaliation allegations in her EEOC charge.

Griffin complained in her EEOC charge that she was being isolated in her job, which impeded her ability to be productive. Her current allegations of being more closely monitored and relieved of authority can be viewed as another manner of describing the perceived isolation she experienced as a result of the alleged retaliation she was experiencing. These allegations are related, and so Griffin may pursue her retaliation claims for being more closely monitored and relieved of authority. But Griffin's claims that she was forced to take extra steps before being approved for FMLA leave and that she was forced to resign are not related to the two alleged discriminatory actions set forth in the EEOC charge—job isolation and denial of an equitable raise. *See Conley v. Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (suspension was discrete action not implicated by allegations of unpleasant job assignments, lack of overtime, or failure to promote); *Buchanan v. Cook County*, No. 12 C 4951, 2013 WL 2637875, at *1–2 (N.D. Ill. June 12, 2013) (refusing to consider failure to promote claim based on assertion of retaliatory suspension in EEOC charge). Thus, Griffin cannot proceed on her retaliation claims based on these allegedly retaliatory actions.

Dismissal of the unexhausted claims is without prejudice, which allows Griffin the opportunity to refile her suit when and if she exhausts her administrative remedies with respect

to those claims. *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989). Because it appears that the time to file an EEOC charge with respect to those claims has passed, any attempt to refile these claims in federal court is likely subject to a statute of limitations defense, but the Court need not decide the issue at this time. *See Hillman v. Costco Wholesale Corp.*, No. 12 C 6012, 2014 WL 3500131, at *10 (N.D. Ill. July 14, 2014).

## II.     Sufficiency of Allegations

### A.     Racial Harassment

To state a claim for racial harassment, Griffin must allege that (1) her work environment was objectively and subjectively offensive, (2) the harassment was based on her race, (3) the conduct was severe or pervasive, and (4) there is a basis for employer liability. *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013). The CHA appears to challenge the last two elements, arguing that the conduct Griffin complains of was not sufficiently severe or pervasive and that she has failed to sufficiently plead a basis for employer liability.

To determine whether conduct meets the third element, the Court must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Russell v. Bd. of Trs. of Univ. of Illinois at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) (quoting *Smith v. Sheahan*, 189 F.3d 529, 533–34 (7th Cir. 1999)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (internal quotation marks omitted) (citations omitted). Griffin has alleged that

over a five-year period of time, Brown repeatedly made inappropriate and derogatory comments to her. Additionally, she claims that Brown threw folders at her, approached her in a threatening manner in public space, and slammed a door on her. These allegations allow the Court to infer that Brown's conduct was so severe or pervasive that it altered Griffin's working conditions. *See Levitin v. Nw. Cmty. Hosp.*, --- F. Supp. 2d ----, 2014 WL 3940012, at *13 (N.D. Ill. Aug. 12, 2014). Discovery may demonstrate otherwise, but the Court must credit Griffin's allegations and draw all reasonable inferences in her favor at this stage.

The CHA also argues that Griffin has not sufficiently pleaded a basis to hold it liable, noting that she has not identified whether Brown was a supervisor or co-worker and whether the CHA was negligent in discovering or remedying the alleged harassment. The CHA's liability depends on the status of the harasser. *Vance*, 646 F.3d at 469; *see also Faragher*, 524 U.S. at 807–08; *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 762–65 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Where the alleged harasser is a supervisor, the employer is strictly liable, although the employer may assert an affirmative defense if the harassment does not result in a tangible employment action. *Vance*, 646 F.3d at 469–70. Where the alleged harasser is a co-worker, the employer is liable if it was negligent in either discovering or remedying the harassment. *Id.* at 470. Brown appears to qualify as one of Griffin's co-workers, but this is an issue to be explored in discovery. Assuming that Brown was a co-worker, however, it can be inferred from the Amended Complaint that Griffin is alleging that the CHA was negligent in failing to stop Brown's harassment despite Griffin making the CHA aware of it. This satisfies the employer liability requirement at the pleading stage. *See Lutes v. Loni Corp.*, No. 10-CV-57-JPG, 2010 WL 1963170, at *4 & n.2 (S.D. Ill. May 17, 2010) (allegation that supervisor turned blind eye to harassment by co-workers was sufficient to allege employer liability). Although discovery may

prove otherwise, the fact-specific determinations involved in the question of employer liability are better left for summary judgment. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 n.9 (7th Cir. 2013) ("It is too early at this pleading stage to figure out whether, if the immediate supervisor was not a supervisor under *Vance*, Wal-Mart could be held liable for harassment on the theory that it was negligent in failing to stop the harassment."). Thus, Griffin's racial harassment claim survives the CHA's motion to dismiss.

## B. Retaliation

Finally, the CHA argues that Griffin's retaliation claim should be dismissed because she has failed to properly plead a retaliation claim under either the direct or indirect method of proof. But the CHA is asking too much of Griffin at the pleading stage; "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Indeed, the CHA's argument that Griffin's claim fails because she has not pleaded that she was treated less favorably than similarly situated employees ignores Supreme Court and Seventh Circuit case law to the contrary. The Supreme Court "has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002);[3] *see also Carlson*, 758 F.3d at 827 ("The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof.").

---

[3] Although *Swierkiewicz* was decided before the Supreme Court's decisions in *Twombly* and *Iqbal*, those decisions did not overrule *Swierkiewicz*. *Luevano*, 722 F.3d at 1028; *see also Twombly*, 550 U.S. at 569–70 (citing *Swierkiewicz* approvingly and noting that, correctly understood, *Swierkiewicz* was a decision regarding the imposition of a heightened pleading standard to Title VII cases).

Instead, all Griffin must allege at this stage is that "she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson*, 758 F.3d at 828 (quoting *Luevano*, 722 F.3d at 1029). Griffin has alleged that she made internal complaints of racial harassment in September 2012 and January 2013 and that soon thereafter she was subjected to several adverse actions as a result of these complaints. The allegations are not so bare-bones as to make the inference of retaliation inconceivable. *Cf. id.* at 828–29 ("[A] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible. If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed."). Thus, Griffin's retaliation claims may proceed to discovery.

## CONCLUSION

For the foregoing reasons, the CHA's motion to dismiss [22] is granted in part and denied in part. Count I is limited to a racial harassment claim. Griffin may not proceed on Count II with respect to the CHA's alleged request for her to obtain additional information for FMLA leave and her alleged forced resignation. The CHA is ordered to answer the remaining allegations of the Amended Complaint by December 9, 2014.

Dated: November 24, 2014

_____
SARA L. ELLIS
United States District Judge