# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 2481 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CHICAGO HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Andrea Griffin, who is African American, alleges claims of racial harassment and retaliation while working for Defendant Chicago Housing Authority (the "CHA"). She brings this lawsuit against the CHA for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The CHA moves for summary judgment. Because the Court finds no basis for employer liability on Griffin's racial harassment claim, the Court grants summary judgment for the CHA on that claim. As for her retaliation claim, Griffin has not introduced evidence that would allow a reasonable jury to find that the CHA took adverse action against her because she reported racial harassment; thus, the Court grants the CHA summary judgment on that claim as well.

## BACKGROUND[1]

Griffin worked for the CHA from May 2004 through March 22, 2013, employed as the office manager in the General Counsel's Office from March 2006 until she left the CHA. During

---

[1] The facts set forth in this section are derived from the CHA's statement of facts to the extent it comports with the Court's summary judgment procedures. They are taken in the light most favorable to Griffin, the non-movant. The Court has included in this background section only those portions of the statement of facts that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court addresses Griffin's failure to comply with the Court's summary judgment procedures, in addition to her attempt to improperly create a dispute of fact through the submission of her self-serving affidavit, below.

her tenure as office manager, she had four supervisors: Gail Neimann, Jorge Cazares, Scott Ammarell, and Melissa Freeman Cadoree. Throughout Griffin's employment at the CHA, the CHA's employee handbook provided that "[e]mployees must report incidents of discrimination, harassment or hostile work environment to the CHA's Ethics Officer or to any other CHA Management Representative." Doc. 47-12 at 10.

Griffin complains about one of her co-workers, George Brown, a Caucasian attorney in CHA's General Counsel's Office. Griffin did not report to Brown, and Brown did not review or supervise Griffin's job performance or have any input in her compensation, promotion opportunities, or benefits. Although Brown and Griffin did not interact on a regular basis, according to Griffin, Brown used racially offensive and harassing language toward her and others in 2007, 2009, 2011, 2012, and 2013. Brown also allegedly tossed file folders toward Griffin from across her desk, delivered his ARDC registration to her, tossed file folders onto a counter above where she was storing supplies, motioned as if he was throwing something in a trash can near her, and let a door close on her. Griffin did not report these incidents to her supervisors, the CHA's Human Resources Department, the Chief or Deputy Chief Legal Officer, the Ethics Officer, or the Equal Employment Opportunity Commission ("EEOC") Officer. Griffin also did not report any of these incidents to the Illinois Department of Human Rights ("IDHR") or the EEOC, despite being asked broadly about all incidents concerning Brown during the IDHR fact finding conference.

Griffin did report one interaction she had with Brown (the "conference room incident") to the CHA, however. On September 11, 2012, Griffin, Brown, and Audrey Wade, another CHA attorney, met in a conference room to discuss the CHA's Housing Choice Voucher program. During the meeting, Griffin and Brown got into a heated disagreement about who had

2

responsibility to find space for the program's consultants to work. Brown pointed his pen at Griffin, saying it was Griffin's responsibility. Brown did not make any racially offensive or disparaging remarks or reference Griffin's race. But Griffin took offense and left the meeting to seek out Ammarell, the CHA's Chief Legal Officer at the time. Because Ammarell was unavailable, she spoke to his assistant and then returned to the meeting. Cadoree, the Deputy Chief Legal Officer and Griffin's direct supervisor at the time, who learned that Griffin was upset from Ammarell's assistant, then interrupted the meeting to speak with Griffin. Griffin explained to Cadoree what had occurred without mentioning anything race-related and indicated that she was fine returning to the meeting, which she then did. Cadoree met with Brown later that day to discuss the conference room incident.

In addition to speaking with Cadoree, Griffin reported the conference room incident to Marilyn Jefferson, the CHA's Senior Director of Human Resources and Training and at the time the Vice President of Human Resources and Training. Jefferson then spoke separately with Brown and Wade to investigate further. Jefferson concluded the incident was merely a "communication conflict." Doc. 47 ¶ 16. Cadoree, Jefferson, and Ammarell together also met with Griffin and Brown to discuss civility in the workplace, the importance of working together, and the need not to raise voices at each other.

At no time during her employment at the CHA did Griffin report any of the other allegedly racially offensive or harassing interactions she had with Brown of which she now complains, including when she reported the conference room incident.[2] Nor did Griffin indicate

---

[2] Griffin attempts to introduce into evidence her affidavit which states that she complained about racially offensive language and harassment to the CHA's outside counsel, who was investigating her complaint; however, when asked at her deposition whether she spoke of the incidents to *anyone*, regardless of whether at the CHA or outside of the CHA, Griffin denied doing so. *See, e.g.*, Doc. 47-3 at 9–11, 13, 25. As discussed below, the Court cannot credit this attempt to create a factual dispute with a self-serving affidavit that contradicts her own deposition testimony.

3

she could not work with Brown at any time. Instead, she advised both Jefferson and Cadoree that she had no issues doing so and declined suggestions to limit interactions with him by, for example, placing a mailbox outside her office so people would not have to enter her office to drop things off or using an intermediary, such as Cadoree, between the two of them.

Beginning in late 2012 and early 2013, Griffin claims that Cadoree, her immediate supervisor, began to more closely monitor her performance, changing her work process in a manner that she no longer operated as autonomously as previously. Griffin believed this kept her from being as efficient as possible, but she could not point to any specific decision she normally would have made autonomously but after the conference room incident required a different process for approval. Instead, she admitted that those decisions she claimed she would normally make autonomously required supervisor approval even before the incident.

Griffin also complains that she did not receive a merit based raise in early 2013. She does not identify any other individual who received a similar raise during that same time period. Additionally, Griffin did not receive a merit based raise in 2010. In fact, she did not receive any pay raises after 2010.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

4

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Compliance with Summary Judgment Procedures

Before addressing the merits of Griffin's claims, the Court must address several procedural issues. This Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts. *See Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment case management procedures). The party opposing summary judgment may, however, submit additional facts it contends demonstrate a genuine issue of material fact in its response, providing citations to supporting material. *Id.*; Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, http://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==. Here, however, Griffin did not participate in the joint process despite the CHA's efforts to obtain her compliance and to follow the Court's summary judgment procedures. *See* Doc. 47-13 (CHA counsel's declaration explaining attempts to obtain Griffin's compliance). Because the Court's procedures are not advisory and Griffin failed to abide by them, the Court may treat the CHA's facts as established. *See Sweatt*, 796 F.3d at 711–12 (affirming this Court's summary judgment case management procedures as conforming to Local

Rule 56.1); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (court may deem admitted any fact in the moving party's statement that is supported by the record and not contested by the opposing party). Moreover, Griffin herself acknowledges she does not disagree with the CHA's version of the facts. *See* Doc. 62-1 at 4 (counsel's representation at a motion hearing); Doc. 58-1 (representation in response to motion for summary judgment that Griffin "accepts Defendant's Statement of Undisputed Facts"). Therefore, the Court treats the CHA's facts as undisputed.

But despite nominally accepting the CHA's facts as undisputed, Griffin nonetheless argues that certain disputed facts prevent the Court from entering summary judgment for the CHA. These alleged disputes of fact arise from Griffin's own self-serving affidavit, dated July 6, 2016, the day before she filed her response to the CHA's summary judgment motion. In this affidavit, Griffin contradicts many of the facts she agrees are undisputed and to which she testified in her deposition, given on January 25, 2016. *See* Doc. 59.[3] For example, Griffin claims to have told Cadoree, Jefferson, and Ammarell that the conference room incident was racially motivated and to have reported other instances of Brown's racially offensive behavior to Cadoree and Jennifer Caracciolo, outside counsel for the CHA investigating her complaints. *See id.* ¶¶ 5–14. But Griffin's attempt to avoid summary judgment based on her affidavit fails: "litigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (citation omitted) (internal quotation marks omitted); *see also Abraham v. Wash. Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies.").

---

[3] Griffin also refers to a letter written by Jennifer Caracciolo, whom the CHA apparently retained to investigate Griffin's complaint concerning the conference room incident. But this letter (or any other evidence surrounding an external investigation) is not in the record; therefore, the Court cannot consider it in deciding the motion for summary judgment.

Griffin cannot claim to have merely suffered an "occasional lapse[ ] of memory" in testifying or to need to correct or clarify her testimony, which would excuse application of the sham affidavit rule, for she had numerous opportunities during her deposition to provide the information contained in her affidavit but did not. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). And she provides no credible explanation for the contradictions between her deposition and affidavit. Although she attempts to argue that she was only asked at her deposition whether she told anyone *at the CHA* of the racially hostile comments, which would not have invited a response concerning information she told Caracciolo, the deposition transcript betrays her because Griffin was asked generally whether she reported information concerning racial harassment to *anyone*, which did not cabin her answers to just CHA employees. *See, e.g.*, Doc. 47-3 at 9–11, 13, 25.[4] Griffin does not even attempt to explain the discrepancy concerning whether she told anyone at the CHA or herself considered that the conference room incident was racially motivated. *Compare* Doc. 59 ¶¶ 5–6, *with* Doc. 47-3 at 18–19. The only reasonable conclusion to be drawn is that her affidavit is "designed to thwart the purposes of summary judgment," warranting its exclusion. *Castro*, 786 F.3d at 571–72 (collecting cases where affidavits have been excluded). Without this affidavit, the Court has before it only the facts submitted by the CHA, facts which, as Griffin acknowledges, are undisputed.

## II.    Racial Harassment Claim (Count I)

To prevail on her racial harassment claim, Griffin must show that (1) her work environment was both objectively and subjectively offensive, (2) the harassment was based on race, (3) the conduct was severe or pervasive, and (4) there is a basis for employer liability.

---

[4] Griffin also had the opportunity to provide this information in response to the CHA's interrogatories, which asked for details of communications she had with "anyone (other than [her] attorney) with regard to the racial harassment and/or retaliation" she alleged. Doc. 47-5 at 16. Griffin responded she only discussed the issue with Dallis Rogers, another CHA employee. *Id.*

7

*Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The CHA argues that Griffin cannot establish any of the elements of her claim.

Although the Court questions whether Griffin has created a genuine issue of fact as to any of the elements, it need only address the fourth element to dispose of this claim. Where the alleged harasser is a co-worker, as the parties agree Brown was, the CHA is liable if it was negligent in either discovering or remedying the harassment. *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013). "Under Title VII, however, an employer's liability for coworker harassment is not triggered unless the employee notifies the employer about an instance of racial harassment." *Id.* at 472. Here, Griffin only notified the CHA of the conference room incident. But even so, she did not identify the incident as being racially motivated so as to put the CHA on notice for purposes of imposing employer liability under Title VII. Thus, Griffin's failure to report the conference room incident as race-related warrants finding for the CHA.[5] *See Jajeh*, 678 F.3d at 569 (vague complaints that do not suggest that harassment was based on forbidden animus not enough to give rise to employer liability); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 550 (7th Cir. 2011) ("[V]ague complaints unrelated to racial hostility are insufficient to establish employer liability.").

But even going a step further, Griffin has not created a genuine issue of fact as to whether the CHA's response was unreasonable because the CHA promptly addressed the issue. As in *Vance*, after Griffin complained of Brown's conduct during the conference room incident, the CHA promptly investigated, concluded it was merely a communication conflict, and counseled

---

[5] There also is not evidence that the racial harassment Griffin suffered was so pervasive and obvious that the CHA could be charged with constructive knowledge of it despite Griffin's failure to identify it as race-related. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506–07 (7th Cir. 2004) (plaintiff failed to set forth evidence to charge employer with constructive knowledge of sexual harassment where plaintiff only complained of one pornographic picture in her locker and did not present any evidence of other employees' complaints about pornographic materials), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, --- F.3d ----, 2016 WL 4411434 (7th Cir. 2016).

both employees concerning civility in the workplace.[6] *Vance*, 646 F.3d at 472–73; *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir. 2005) ("Our cases recognize prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action."). The CHA crafted its response to resolve the issues it knew about and cannot be held liable as a result. *Vance*, 646 F.3d at 473 (although "the ideal result of an employee's complaint would be that the harassment ceases . . . . Title VII does not require an employer's response to 'successfully prevent[ ] subsequent harassment'" (second alteration in original) (quoting *Cerros*, 398 F.3d at 954)). Although Griffin alleges that Brown engaged in other harassing behavior after the conference room incident, she admits that she did not report these incidents to anyone at the CHA, meaning that the CHA could not take additional steps to address them; therefore, it is not liable for its failure to take further action. *See Chaparro v. City of Chicago*, 47 F. Supp. 3d 767, 778 (N.D. Ill. 2014) (employer did not respond unreasonably to complaints of harassment after subsequent incidents arose because plaintiff did not report those incidents to the employer). Further, the evidence in the record shows Griffin turned down suggested accommodations that would have lessened her interactions with Brown; moreover, the CHA "was not required to completely insulate" Griffin from Brown. *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 385 (7th Cir. 2012) (attempts to minimize contact sufficient under the circumstances). Finally, the CHA's equal employment opportunity policy, which prohibits racial harassment and sets forth reporting and investigation procedures, also supports finding no basis for employer liability. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 811–12 (7th Cir. 1999) (employer exercised reasonable care in

---

[6] Griffin complains in her response to the motion for summary judgment that the CHA's investigation was not reasonably prompt, claiming it was unnecessarily slow in getting started. To the extent she complains of any outside investigation, instead of the internal response that occurred, the Court finds that such outside investigation is not properly before the Court because no admissible evidence has been presented concerning such an investigation. The only facts concerning an investigation before the Court concern the investigation undertaken by Cadoree, Ammarell, and Jefferson, which began the same day as the conference room incident, which cannot be called anything but prompt.

9

preventing sexual harassment where it had a sexual harassment policy indicating that such harassment would not be tolerated); *Chaparro*, 47 F. Supp. 3d at 779 n.6 (existence of anti-harassment policy supported finding of no employer liability). Griffin cannot complain that the CHA did not promptly investigate other instances of alleged harassment when she failed to avail herself of the remedies to harassment made available to her under the CHA's policy. *See Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 698 (7th Cir. 2014) (failure to report incident after prior report and employer response does not make employer liable); *Logan v. Sabre Mfg., LLC*, No. 3:12-cv-338-CAN, 2013 WL 5570218, at *10–11 (N.D. Ind. Oct. 8, 2013) (finding that employer could not be held liable for harassment where, among other things, employee did not report all incidents of harassment in contravention of anti-harassment policy, noting that "[t]he employee also has a responsibility to mitigate his damages and must avail himself of the remedies to harassment made available by the employer"). Thus, the Court grants summary judgment for the CHA on Griffin's racial harassment claim.[7]

## III. Retaliation Claim (Count II)

The CHA also seeks summary judgment on Griffin's retaliation claim. Griffin contends that the CHA retaliated against her for complaining about Brown's racially discriminatory treatment of her, claiming that the CHA denied her a raise in early 2013, more closely monitored

---

[7] Griffin would also be hard-pressed to demonstrate that Brown's actions were severe or pervasive. Griffin alleges that, over a six-year period, Brown acted in a harassing manner toward her on approximately fifteen occasions. But "[t]he infrequency of the offensive comments is relevant to an assessment of their impact. A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995); *see also Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."). Moreover, Griffin's admitted failure to report any of these alleged incidents, save for the conference room incident, which she did not even identify as race-related, undermines her contention that they were severe or pervasive enough to create a hostile work environment. *See Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) (employee's inaction in face of racially insensitive comments "belie[d] the notion" that the "comments created a hostile work environment").

her activities, and relieved her of authority.[8] To avoid summary judgment, Griffin must show that a reasonable jury could find that she suffered an adverse employment action because she engaged in statutorily protected activity.[9] *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013).

Griffin's retaliation claims fail for lack of an adverse employment action or lack of a causal connection.[10] First, the CHA argues that Griffin did not suffer an adverse employment action. "The showing a plaintiff must make to set out an adverse employment action required for

---

[8] Griffin appears to also argue that she suffered an adverse employment action due to Brown's continued harassment after reporting the conference room incident in that she was required to take FMLA leave, found it difficult to work, and suffered health issues. But the Court already limited the scope of her retaliation claims at the motion to dismiss stage; thus, the Court only addresses those retaliatory actions on which the Court allowed Griffin to proceed. *See Griffin v. Chicago Hous. Auth.*, No. 14 C 2481, 2014 WL 6657799, at *3–4 (N.D. Ill. Nov. 24, 2014).

[9] Courts have referred to a direct and indirect method of proof to establish a retaliation claim. *See, e.g.*, *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). In *Ortiz*, the Seventh Circuit addressed the methods in establishing employment discrimination claims, holding that the correct legal standard to evaluate a claim "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." 2016 WL 4411434, at *4. The *Ortiz* court further stated, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.*; *see also Lord v. High Voltage Software, Inc.*, --- F.3d ----, 2016 WL 5795797, at *4 (7th Cir. Oct. 5, 2016) (in the retaliatory discharge context, courts should consider whether "the record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge" instead of looking at direct or indirect evidence of causation independently). That said, the Seventh Circuit acknowledged that the *McDonnell Douglas* burden-shifting method remains good law. *Ortiz*, 2016 WL 4411434, at *5. But because Griffin does not attempt to establish her retaliation claim under the burden-shifting method, the Court need not address the burden-shifting method further and will only consider whether she has produced enough evidence to permit a reasonable jury to conclude that she suffered an adverse employment action because of her protected activity.

[10] The CHA does not challenge whether Griffin engaged in statutorily protected activity for purposes of summary judgment, although the Court questions whether Griffin could show this based on the facts in the record because, as discussed above in connection with the hostile work environment claim, the only evidence before the Court at this stage is that Griffin raised the conference room incident with her supervisors and that she did not identify that incident to have been racially motivated. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)), *overruled on other grounds by Ortiz*, 2016 WL 4411434. But even under this lower standard, Griffin's claims of being more closely monitored and being relieved of authority do not qualify. When questioned at her deposition, Griffin admitted that any changes only affected the work process and could not point to specific decisions she normally would have made on her own but that now required additional layers of approval. Such conclusory assertions are not sufficient to overcome summary judgment. *See Boss*, 816 F.3d at 919 (plaintiff's general complaints of being subjected to "a barrage of criticism" and "workplace stresses," without identifying specific incidents, not sufficient to overcome summary judgment). Instead, she acknowledged that decisions she claimed she previously made on her own had also required supervisor approval, meaning that any changes after the conference room incident in the manner the CHA supervised her work were not materially adverse. *See Burlington N.*, 548 U.S. at 68 ("petty slights or minor annoyances that often take place at work and that all employees experience" do not qualify as adverse employment actions; the action must be materially adverse); *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) ("[b]y and large a reassignment that does not affect pay or promotion opportunities" does not amount to an adverse employment action).

Although the denial of the pay raise in early 2013 amounts to an adverse employment action, *see Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654 (7th Cir. 2000), the record contains no evidence to suggest a causal connection between Griffin's complaints surrounding the

conference room incident and the CHA's denying Griffin that pay raise. Griffin has not submitted any evidence surrounding the reasons for the denial of the pay raise, nor could she identify any other employees who received raises around that same time period. She also conceded that the CHA previously denied her a pay raise, which cuts against finding that the denial of a raise in 2013 was retaliatory. Without any evidence connecting the pay raise denial to her complaints concerning the conference room incident, Griffin cannot proceed further on this aspect of her retaliation claim. *See Patterson v. Triangle Tool Corp.*, No. 14-C-1557, 2016 WL 3519617, at *7–8 (E.D. Wis. June 22, 2016) (granting summary judgment for defendant on plaintiff's claim that defendant denied him raises because of his age, disabilities, and use of FMLA leave where plaintiff did not submit any admissible evidence to establish the required causal connection). Thus, the Court grants summary judgment for the CHA on Griffin's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court grants the CHA's motion for summary judgment [45]. The Court enters judgment for the CHA on Counts I and II. This case is terminated.

Dated: October 19, 2016

_____
SARA L. ELLIS
United States District Judge